Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Patrick, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Anthony McLucas

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Anthony McLucas,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Experian Information Solutions, Inc.; TransUnion, LLC; Equifax Information Services, LLC; Toyota Motor Credit Corporation<br><br>　　　　　Defendants. | CASE NO. 2:23-cv-09615<br><br>COMPLAINT FOR DAMAGES:<br><br>　1. Violation of Fair Credit Reporting Act;<br>　2. Violation of California Consumer Credit Reporting Agencies Act |

COMES NOW Plaintiff Anthony McLucas (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

## **INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b) and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's account with Toyota Motor Credit Corporation (hereinafter "TMCC").

3. Here, TMCC reported inaccurate and misleading account information to Experian, Equifax, and TransUnion, giving the false impression that Plaintiff's account was included/discharged in bankruptcy rather than being reaffirmed and current.

4. TMCC had actual knowledge of Plaintiff's chapter 7 bankruptcy filing and approval of the reaffirmation agreement it prepared to exclude its debt from discharge.

5. Instead of accurately reporting the status of the account after approval of the reaffirmation agreement, however, TMCC continued to report the account as included/discharged in bankruptcy.

6. Such reporting continued for months after entry of Plaintiff's discharge.

7. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

8. Plaintiff's credit score has been adversely impacted by the reporting; he has been unable to rebuild his credit score and obtain favorable interest rates as a result of the reporting.

9. Third parties have been exposed to the inaccurate tradelines.

10. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

11. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

12. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

13. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

14. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for accurate credit reporting in an attempt to purposefully undermine Plaintiff's attempt to improve his FICO Score.

15. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

16. FICO is a leading analytics software company with its principal headquarters located in San Jose California.

17. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

18. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

19. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan.

20. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

21. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900.
22. A higher FICO Score demonstrates lower credit risk or less likelihood of default.
23. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.
24. There are 28 FICO Scores that are commonly used by lenders.
25. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).
26. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Information Services, LLC, and Transunion, LLC.
27. FICO does not control what information is provided in a consumer's credit report.
28. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.
29. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.
30. Each of the five factors is weighed differently by FICO.
31. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.
32. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments.

33. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

34. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.

35. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

36. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

37. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported.

### Metro 2

38. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

39. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format.

40. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt.

41. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

42. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

43. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

44. The CDIA is *the* expert on accurate credit reporting. In support of his allegations Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.
    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.
    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.
    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

45. The CDIA's Metro 2 is accepted by all CRAs.

46. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

47. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

48. The three main credit bureaus helped draft the CRRG.

49. The CRRG is not readily available to the public. It can be purchased online for $229.45.

50. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

51. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.
52. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.
53. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### Plaintiff's Credit Report

54. In August of 2023 Plaintiff ordered a credit reports from Experian, Equifax Information Services, and TransUnion LLC to ensure proper reporting by Plaintiff's creditors.
55. Plaintiff noticed a delinquent and or adverse trade line on his August 2023 credit reports where TMCC reported Plaintiff's account as included/discharged in bankruptcy rather than open and reaffirmed.
56. TMCC's reporting continued for months after entry of Plaintiff's chapter 7 discharge.

### Inaccuracy – TMCC

57. TMCC transmitted inaccurate, misleading, and incomplete information to Equifax, Experian, and TransUnion regarding Plaintiff's account after TMCC's reaffirmation agreement was approved.
58. Rather than update the account to report it as open/current/reaffirmed, TMCC continued to report that the account was included/discharged in bankruptcy.

59. TMCC continued this inaccurate and incomplete reporting despite continuing to accept Plaintiff's monthly payments on the reaffirmed account.
60. TMCC's reporting continued for months after approval of the reaffirmation agreement, whereby it confirmed the account was discharged rather than open and current.

**Willfulness**

61. TMCC had actual knowledge of the bankruptcy but refused to update the CII to indicate the account was reaffirmed.
62. Such reporting was not the result of accident but instead a deliberate attempt to undermine Plaintiff's ability to repair his credit.
63. TMCC's reporting of the discharge is a deliberate attempt to undermine Plaintiff's efforts to rebuild his credit.

**Damages**

64. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.
65. Plaintiff has experienced frustration and anxiety given that Plaintiff reaffirmed his vehicle loan to specifically avoid having that account included in her bankruptcy.
66. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by TMCC's reporting as that reporting has been disclosed and disseminated to various third-party lenders.
67. Until TMCC's reporting has been properly updated Plaintiff continues to appear a severe credit risk.
68. Plaintiff has only been offered extremely high interest loans and credit cards as a result of the inaccuracies that appear in his credit report.

69. The actions of Experian, TransUnion, Equifax and TMCC, as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

### FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**Equifax, Experian, and TransUnion – Failure to Assure Credit Reporting Accuracy.**

70. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

71. Experian, TransUnion, and Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

72. Had Experian, TransUnion, and Equifax maintained reasonable procedures to assure maximum accuracy Experian, TransUnion, and Equifax would never have allowed TMCC to report the account as described herein.

73. As a result of Experian, TransUnion, and Equifax's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, denial of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

74. Experian, TransUnion, and Equifax allowed the inaccurate information reported by TMCC to be transmitted to various third-party lenders, further damaging Plaintiff's credit.

75. The violations described herein by Experian, TransUnion, and Equifax were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

76. Instead of correcting TMCC's inaccurate reporting Experian, TransUnion, and Equifax allowed the inaccurate and misleading information to continue to be reported and disseminated to third parties.

### Willfulness

77. Consequently, Experian, TransUnion, and Equifax are liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

78. In the alternative Experian, TransUnion, and Equifax was at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

79. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian, TransUnion, and Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### SECOND CAUSE OF ACTION
(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendant CO)

**TMCC – Reporting Inaccurate Information to Equifax**

80. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

81. In the regular course of its business operations, TMCC routinely furnishes information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

82. TMCC continued to transmit inaccurate information to Experian, TransUnion, and Equifax despite knowing that Plaintiff reaffirmed her account with TMCC and was continuing to make timely monthly payments.

83. Plaintiff alleges that Defendant TMCC re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

84. Plaintiff also alleges that TMCC all had reason to know that the information reported on Plaintiff's account was misleading, inaccurate, and incomplete.
85. Plaintiff alleges TMCC all had reason to know that by not following well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.
86. Despite the CRAs own culpability TMCC failed to notify Equifax, Experian, and TransUnion that the information it re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).
87. TMCC's communication of false information and erroneous reporting was done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.
88. As a direct and proximate result of TMCC's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, diminished credit score, emotional distress, frustration, attorney's fees, and such further expenses in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31;
2. Award punitive damages in order to deter further unlawful conduct

pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31

3. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;

4. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

5. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Dated: November 14, 2023

Gale, Angelo, Johnson, & Patrick, P.C.
*/s/ Joe Angelo*
Joe Angelo
Attorney for Plaintiff